UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Imaging Alliance Group, LLC,                            Civ. File No. 05-384 (PAM/RLE)
d/b/a The Imaging Path,

                      Plaintiff,

v.                                                   **MEMORANDUM AND ORDER**

American Economy Insurance Company,

                      Defendant.

---

.      This matter is before the Court on cross-Motions for Summary Judgment. For the reasons that follow, Plaintiff's Motion is denied and Defendant's Motion is granted.

**BACKGROUND**

This action arises from a dispute over whether the advertising injury provision in a commercial general liability policy required Defendant American Economy Insurance Company ("American Economy") to defend Plaintiff Imaging Alliance Group, LLC ("Imaging Alliance") in a lawsuit commenced by IKON Office Solutions, Inc. ("IKON").

**A.**     **The Insurance Policy**

The commercial general liability policy required American Economy to defend Imaging Alliance against any suit seeking damages because of an advertising injury caused by "an offense committed in the course of advertising [Imaging Alliance's] goods, products or services." (Gustafson Aff., Oct. 10, 2005, Ex. D at 37.) The policy defines "advertising

injury" as injury arising out of (1) the misappropriation of advertising ideas or style of doing business; or (2) infringement of copyright, title, or slogan.[1] (Id. at 42.)

**B.     The Underlying Action**

Imaging Alliance and IKON compete in the business of selling, leasing, and servicing office equipment. In February 2004, IKON sued Imaging Alliance and twelve former IKON employees, alleging that Imaging Alliance recruited and hired the employees to divert the business of IKON customers, established a "substantially similar business operation," misappropriated confidential information and trade secrets about IKON customers, and injured IKON's ability to maintain the goodwill of its customers. (Id. Ex. B ¶ 1.)

Much of the IKON complaint emphasized the importance of the misappropriated information, and described how the information contained detailed profiles of IKON customers and various marketing strategies. (Id. ¶¶ 17-27.) It also explained that the former employees were responsible for large geographic regions with high sales figures and that these individuals had access to the information for the "entire Minnesota Marketplace." (Id. ¶¶ 30-32.) In addition, the complaint alleged that the former employees violated various employment contracts by misappropriating the information and competing against IKON. (Id. ¶¶ 28-57.) Specifically, the complaint accused the former employees of violating confidentiality agreements, as well as agreements that prohibited the former employees from soliciting employees and current or prospective IKON customers. (Id.)

---

[1] The definition of "advertising injury" also includes injury arising from libel, slander, or an invasion of privacy. (Gustafson Aff., Oct. 10, 2005, Ex. D at 42.) However, those offenses are not at issue in this case.

Relating to this case, the IKON complaint described how Imaging Alliance purportedly solicited IKON's customers. Specifically, IKON alleged that Imaging Alliance and the former employees conspired to "target, solicit and divert the actual and prospective customers of IKON from IKON" and to "otherwise attempt to divert employees, customers and business of IKON" to Imaging Alliance. (Id. ¶ 60.) IKON also alleged that Imaging Alliance and the former employees "solicited and diverted numerous IKON customers" and used IKON's confidential information "to solicit and convert IKON customers, business opportunities, customer goodwill and future relations" to Imaging Alliance. (Id. ¶¶ 61, 63.) The IKON complaint further claimed that the former employees might use the confidential information to "target select IKON customers and solicit their business" and divert business from IKON. (Id. ¶¶ 68-70.)

Based on these factual allegations, the IKON complaint asserted numerous claims for relief. Count One sought an order enjoining the former employees from, among other things, soliciting customers and prospective customers of IKON. (Id. ¶¶ 71-74.) Count Two claimed that the former employees breached their employment agreements. (Id. ¶¶ 75-77.) Count Three asserted misappropriation of trade secrets. (Id. ¶¶ 78-84.) Count Four alleged breach of duty of loyalty and fiduciary duty by recruiting the employees to leave IKON and disclosing confidential information. (Id. ¶¶ 85-87.) Count Five claimed unfair competition by, among other things, soliciting IKON's clientele. (Id. ¶¶ 88-91.) Count Six alleged tortious interference with contractual relations relating to the employment agreements. (Id. ¶¶ 92-98.) Count Seven asserted that Imaging Alliance intentionally interfered with IKON's actual and

prospective business relationships by using confidential information to obtain an improper competitive advantage. (Id. ¶¶ 99-100.) Count Eight alleged conspiracy to commit the above-mentioned offenses. (Id. ¶¶ 101-104.)

**C.     Tendering the Defense**

On March 10, 2004, Imaging Alliance tendered defense of the IKON litigation to American Economy. On April 27, 2004, American Economy informed Imaging Alliance that it reviewed the IKON complaint and determined that no claims fell within the advertising injury provision of the commercial general liability policy. It requested that Imaging Alliance provide additional information or reasons why coverage might exist. Imaging Alliance did not respond. Consequently, American Economy denied coverage and any duty to defend Imaging Alliance in the IKON litigation. Thereafter, Imaging Alliance incurred $172,552.94 in fees and costs to defend the IKON litigation. (Gustafson Aff. ¶¶ 3-4, Nov. 14, 2005.) After settling the IKON litigation, Imaging Alliance commenced this action.

**DISCUSSION**

Both parties have moved for summary judgment. Imaging Alliance argues that the IKON litigation arguably falls under the advertising injury provision of the commercial general liability policy. In contrast, American Economy contends that the IKON action clearly falls outside the scope of coverage.

**A.     Summary Judgment**

The construction of an insurance policy presents a question of law that may be decided on summary judgment. Reliance Ins. Co. v. Shenandoah S., Inc., 81 F.3d 789, 791 (8th Cir.

1996). Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**B.   Duty to Defend**

Under Minnesota law, an insurer must defend its insured when any part of a claim arguably falls within the scope of the policy. COMSAT Corp. v. St. Paul Fire & Marine Ins. Co., 246 F.3d 1101, 1105 (8th Cir. 2001). Consequently, an insurer seeking to avoid the duty to defend must show that each claim asserted against the insured falls clearly outside the scope of coverage. Id. The Court must resolve any ambiguity regarding coverage in favor of the insured. Franklin v. W. Nat'l Mut. Ins. Co., 574 N.W.2d 405, 407 (Minn. 1998) (citation omitted).

To determine whether the insurer has a duty to defend, the Court compares the allegations in the underlying complaint with the relevant language in the insurance policy. Pac. Ins. Co. v. Burnet Title, Inc., 380 F.3d 1061, 1064 (8th Cir. 2004) (citing Garvis v. Employers Mut. Ins. Cas. Co., 497 N.W.2d 254, 256 (Minn. 1993)). However, "the words of the complaint need not precisely match the words of the policy, they must simply put the insurance company on notice of a claim within the policy coverage." Franklin, 574 N.W.2d at 407 (citing Garvis, 497 N.W.2d at 258).[2]

When interpreting terms in an insurance policy, the Court applies ordinary meanings unless the parties use some other meaning in the contract. Polaris Indus. v. Cont'l Ins. Co., 539 N.W.2d 619, 622-23 (Minn. Ct. App. 1996). The Court may not find an ambiguity in the plain language of a policy in order to create coverage where none otherwise exists. Fluoroware, Inc. v. Chubb Group of Ins. Co., 545 N.W.2d 678, 681 (Minn. Ct. App. 1996).

**C.     Advertising Injury**

The advertising injury provision required American Economy to defend Imaging Alliance in the IKON litigation if three elements exist. First, the IKON complaint must have alleged injury directly or proximately caused by Imaging Alliance's advertising activity. Next, the alleged injury must have fallen within the scope of the policy's definition of "advertising injury." Finally, there must be no applicable exclusions. Polaris Indus., 539 N.W.2d at 621-23.

---

[2] Thus, courts may also rely on extrinsic facts to establish the existence of the duty to defend. Home Ins. Co. v. Waycross, Inc., 990 F. Supp. 720, 728 (D. Minn. 1996) (Kyle, J.) (citations omitted).

The IKON complaint contains no allegations that IKON was injured by any Imaging Alliance advertisement. Indeed, the IKON complaint does not allege that Imaging Alliance ever "advertised" its goods, products, or services. Rather, it alleges that Imaging Alliance targeted and solicited actual and prospective IKON customers. Thus, the threshold issue is whether the allegations of solicitation are sufficient to satisfy the first factor under Polaris Industries.

Because the policy does not define "advertising," the Court uses the plain meaning of the term. Advertising is "the action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public especially by means of printed or broadcast paid announcements." Webster's Third New Int'l Dictionary 31 (1986); see also Black's Law Dictionary 59 (8th ed. 2004) (defining "advertising" as the "action of drawing the public's attention to something to promote its sale."); Ballentine's Law Dictionary 41 (3d ed. 1969) (defining "advertise" as "to give public notice of; to announce publicly, especially by printed notice" and "to make known to the public through a medium of publicity that one's goods or services are available for sale or engagement").

In contrast, "solicitation" does not require an element of public announcement. A "solicitation" is simply "the act . . . of requesting or seeking to obtain something." Black's Law Dictionary 1427. Similarly, the definition of "solicit" is much broader than the definition of "advertise." To "solicit" means "to endeavor to obtain by asking or pleading" or "to seek eagerly or actively." Webster's Third New Int'l Dictionary 2169; see also Ballentine's Law

7

Dictionary 1192 (defining "solicit" as "to importune, entreat, implore, ask attempt, or try to obtain . . . to invite a business transaction").

Several courts have recognized the difference between advertising and solicitation, and have held that allegations of solicitation do not arguably fall within the scope of advertising injury provisions. For example, in Tschimperle v. Aetna Cas. & Surety Co., 529 N.W.2d 421 (Minn. Ct. App. 1995), the insured contended that an advertising injury provision covered an action arising from a one-on-one, in-person solicitation. Id. at 425. The Minnesota Court of Appeals rejected the argument, reasoning that advertising required a widespread distribution or public announcement. Id. at 425.[3]

Tschimperle comports with decisions from other jurisdictions that have addressed whether factual allegations markedly similar to those in the IKON complaint fall within advertising injury provisions. For example, in Hameid v. National Fire Insurance of Hartford, 71 P.3d 761 (Ca. 2003), an insurer sued its commercial general liability insurer for failing to defend in an underlying action involving allegations that the insured misappropriated a competitor's customer list and used the list to solicit the competitor's customers. The insured argued that such allegations triggered the insurer's duty to defend under the advertising injury

---

[3] The Court acknowledges that the Minnesota Court of Appeals has issued unpublished decisions that broadly construe "advertising" to include targeted solicitations. See Gen. Cas. Co. of Ill. v. Four Seasons Greetings, A04-518 & A04-920, 2004 WL 2987796, at *6-7 (Minn. Ct. App. Dec. 28, 2004) (holding that an insured "advertised" by disseminating product catalogs only to a specific group of individuals); Cargill, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, No. A03-187, 2004 WL 51671, at *16 (Minn. Ct. App. Jan. 13, 2004) (finding that the distribution of confidential memoranda to two companies about a potential sale was advertising). However, the Court is not influenced by these decisions, as they lack precedential weight and seemingly conflict with the published decision in Tschimperle.

provision. After throughly discussing case law addressing what activities constitute advertising, the court found that the term "advertising" requires widespread promotion to the public. Id. at 765-68. The court therefore concluded that allegations that the insured engaged in one-on-one solicitation of a few customers did not trigger the insurer's duty to defend.

Select Design v. Union Mutual Fire Insurance Co., 674 A.2d 798 (Vt. 1996) also involved an insured seeking defense after being sued for allegedly using proprietary information, including a customer list that a competitor's former employee provided, to solicit the competitor's customers. The Vermont Supreme Court concluded that solicitation of the competitor's customers did not constitute advertising. Id. at 802-03. It reasoned that defining "advertising" to include customer solicitations would misconstrue the term: "If the act of contacting potential customers is advertising for the purposes of the policy, then any dispute related to economic competition among businesses is covered by the policy provision for advertising injury." Id. at 803.

In Smartfoods, Inc. v. Northbrook Property & Casualty Co., 618 N.E.2d 1365 (Mass. Ct. App. 1993), the insured allegedly solicited distributors by mail. It sought insurance coverage by characterizing its letters as advertising and arguing that the complaint against it alleged injuries from advertising activities. The Massachusetts Court of Appeals rejected the argument. It defined "advertising" as "a public announcement to proclaim the qualities of a product or point of view." Id. at 1368. Because the solicitations did not "conform to ordinary notions of calling to the attention of the public the merits of a product," the injuries alleged in the underlying action did not fall within the advertising injury provision. Id. at 1368.

Finally, in Monumental Life Ins. Co. v. U.S. Fidelity & Guaranty Co., 617 A.2d 1163 (Md. Ct. App. 1993), the insured was accused of pirating a competitor's employees, misusing trade secrets and confidential information, and soliciting the competitor's customers through personal solicitation. The insured sought a defense under the advertising injury provision of its commercial general liability insurance policy, but the Maryland Court of Appeals determined that the insured's alleged activities were not advertising. Id. at 1174. In doing so, the court distinguished advertising from solicitation, noting that the former must be public in nature. Id. Consequently, the court found that the insured's one-on-one solicitations were clearly not advertising within the usual meaning of the word.[4]

The IKON complaint alleges that Imaging Alliance and the former IKON employees targeted and solicited actual and prospective IKON customers. The IKON complaint contains no allegations that Imaging Alliance acted to draw the public's attention to its goods or services. To the contrary, the allegations narrowly focus on specific contacts with IKON customers. Indeed, IKON sought to enjoin Imaging Alliance for soliciting only those customers whom the former IKON employees had previously serviced or contacted. None of

---

[4] The Court acknowledges that the court in John Deere Ins. Co. v. Shamrock Indus., Inc., 696 F. Supp. 434 (D. Minn. 1988) (Doty, J.) found that sending three letters extolling the virtues of a product and demonstrating the product to one potential buyer arguably constituted "advertising" within the meaning of an insurance policy. Id. at 439-40. In John Deere, the court noted that "activity directed at one customer seems to stretch the meaning of advertising," but nonetheless relied on Black's Law Dictionary to conclude that the definition of "advertise" encompasses any form of solicitation. Id. This Court respectfully disagrees with the John Deere decision, and notes that it was based on a previous version of Black's Law Dictionary, which broadly defined the term "advertise." The most recent edition of Black's Law Dictionary has deleted the sentences on which the John Deere court relied and indicates that advertising does not encompass direct solicitations.

the allegations or relief sought in the IKON complaint arguably relate to drawing the attention of the public. The Court refuses to construe allegations of solicitation as advertising, as such construction would contort the plain language of both terms and broaden the scope of the advertising injury provision too far. Because the IKON complaint merely alleges that Imaging Alliance solicited IKON customers, the Court finds that the IKON complaint does not allege any injury directly or proximately caused by Imaging Alliance's advertising activity.[5] Thus, American Economy had no duty to defend.

**D.     Costs and Fees in this Action**

Imaging Alliance also seeks its attorneys' fees and costs incurred in this action. Generally, legal fees are not recoverable unless there is statutory authority. However, Minnesota law provides that an insured may recover litigation costs incurred because the insurer breached its contractual duty to defend. Am. Standard Ins. Co. v. Le, 551 N.W.2d 923, 927 (Minn. 1996); Morrison v. Swenson, 142 N.W.2d 640, 647 (Minn. 1966). Because the Court finds that American Economy did not breach its contractual duty to defend, the Court denies Imaging Alliance's request for fees and costs incurred in this action.

**CONCLUSION**

Solicitation and advertising are not synonymous. The Court refuses to torture the plain meaning of both terms. Thus, even though the Court must resolve ambiguity regarding

---

[5] The parties agree that no exclusions apply, so the third Polaris Industries element is satisfied. Because the Court finds that the IKON Complaint does not meet the first Polaris Industries requirement, the Court need not address whether the alleged injury fell within the scope of the policy's definition of "advertising injury."

11

coverage in favor of the insured, it finds that the allegations in the IKON complaint clearly fell outside the advertising injury provision. Accordingly, based on the foregoing, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Imaging Alliance's Motion for Summary Judgment (Clerk Docket No. 7) is **DENIED**;

2. American Economy's Motion for Summary Judgment (Clerk Doc. No. 17) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  January 19, 2006

                                                                    s/ Paul A. Magnuson
                                                                    Judge Paul A. Magnuson
                                                                    United States District Court Judge